UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID BARLOW,

                                        Plaintiff,

                                                        9:10-CV-535
v.                                                      (MAD/TWD)

BRIAN FISCHER AND GEORGE ALEXANDER,

                                        Defendants.
_____

APPEARANCES:                            OF COUNSEL:

DAVID BARLOW, 09-B-0450
Plaintiff *pro se*
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN                ADAM W. SILVERMAN
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, New York 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983

("§ 1983"), was initially referred to Magistrate Judge George H. Lowe for Report and

Recommendation by the Honorable Gary L. Sharpe, Chief United States District Judge, pursuant

to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).[1]  Upon Magistrate Judge Lowe's retirement on

February 9, 2012, the case was reassigned to me.

_____

        [1]  The case was reassigned from Judge Sharpe to the Honorable Mae A. D'Agostino on
April 20, 2010.

Plaintiff, David Barlow ("Barlow") alleges in his Amended Complaint that Defendants Brian Fischer ("Fischer"), Commissioner of the New York State Department of Correctional Services ("DOCS")[2], and George B. Alexander ("Alexander"), Commissioner of the New York State Division of Parole ("Division of Parole"), illegally imposed a five year period of post-release supervision ("PRS") on him in connection with his conviction on two counts of robbery in the second degree.  (Dkt. No. 10 at 4-5.)  Barlow claims that as a result of the illegal imposition of PRS, the Division of Parole was able to give him a twelve month time assessment for parole violations instead of only the six and one-half months remaining on his original sentence. *Id*. at 5.  As a result, according to Plaintiff, he was wrongfully incarcerated for nearly three months past his maximum expiration date. *Id*. at 5; (Dkt. No. 40-3 at 110-113, 117-118). Plaintiff seeks money damages against Defendants for the pain and suffering caused by his illegal incarceration.  (Dkt. No. 10.)

Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that: (1) Plaintiff has failed to state a claim under 42 U.S.C. § 1983 or New York State law; (2) Defendants were not personally involved in the alleged violation of Plaintiff's rights; (3) and Defendants are entitled to qualified immunity.  (Dkt. No. 40-4 at 2.)  For the reasons discussed below, I recommend that Defendants' motion for summary judgment be granted on the grounds that they are entitled to qualified immunity.

---

[2]  On April 1, 2011, the New York State Department of Correctional Services and Division of Parole merged into one comprehensive agency entitled the New York State Department of Corrections and Community Supervision, referred to as "DOCCS." Because all of the events relevant to this case occurred prior to the merger, I will refer to this agency as DOCS.

I.    **BACKGROUND**

On April 3, 2002, Plaintiff was sentenced as a second time violent felony offender to two concurrent seven year terms on two counts of robbery in the second degree.  (Dkt. No. 43 at 22.) Barlow was also subject to a mandatory five year term of PRS under N.Y. Penal Law § 70.45 (1999).  Because neither the transcript of his sentencing nor his sentencing and commitment paperwork reflected the imposition of a PRS term by the court, the mandatory PRS was administratively imposed by DOCS.  *Id*. at 29; (Dkt. No. 40-3 at 44).

The initial maximum expiration date on Plaintiff's sentence was April 26, 2008.  (Dkt. No. 40-3 at 44.)  Barlow was released into parole supervision one year earlier on April 26, 2007.[3] *Id*. at 47.  As he was being released, Barlow told the parole officer at the correctional facility that he had never been sentenced to PRS.  The officer informed him that DOCS had added PRS to his sentence.[4]  *Id*. at 97.  Barlow agreed in writing to accept the PRS and abide by the written conditions of his release.  *Id.* at 44-46, 63.

A violation of release report was filed on Plaintiff in October of 2007.[5]  *Id*. at 53-57.

---

[3]  When Plaintiff was released from DOCS, he was placed under the jurisdiction of and supervised by the Division of Parole during his period of PRS.  (Dkt. No. 40-3 at 142.)  See N.Y. Executive Law § 259-a(4).

[4]  Barlow continued to tell his parole officers and, upon his return to prison on the parole violation, his counselors, that he had not been sentenced to PRS on the robbery charges.  The response was always that there was a term of PRS on his paperwork which had to be enforced. (Dkt. No. 40-3 at 102-103, 105-106.)

[5]  When a parole officer has reasonable cause to believe that an individual has violated the conditions of his PRS, the Division of Parole issues a warrant for his detention and holds a release revocation hearing.  (Dkt. No. 40-3 at 142.)  See N.Y. Executive Law § 259-i(3).  If there is a finding that the individual did violate one or more of the conditions of release in an important respect, he can be returned to DOCS for a period of time determined by the Division of Parole in accordance with N.Y. Executive Law §259-i(3)(x).  (Dkt. No. 40-3 at 142.)

Barlow was charged with violating the special conditions of his release by violating his curfew; failing to attend a mandated substance abuse program and lying to his parole officer about it; using marijuana; and intentionally interfering with the investigation of a homicide by providing a false name and date of birth in an attempt to hide his identity from the police. *Id.*

At his parole revocation hearing on October 23, 2007, Plaintiff told the administrative judge that he had never been sentenced to PRS. *Id.* at 98. She nonetheless imposed a delinquency time assessment of twelve months on him. *Id.* at 49, 104-105. After he was re-incarcerated, Barlow wrote two letters to DOCS in Albany concerning the term of PRS that had been imposed on him.[6] *Id.*

On May 21, 2008, DOCS Executive Deputy Commissioner, Anthony J. Annucci ("Annucci"), sent a letter to the judge who had sentenced Plaintiff on the robbery convictions informing her that DOCS's records revealed that Barlow's sentencing transcript and sentencing and commitment papers did not contain a PRS pronouncement. (Dkt. No. 43 at 19-20.) In the letter, on which Plaintiff was copied, *id.* at 20, Annucci explained that based upon DOCS's earlier understanding of the requirements of Penal Law § 70.45, mandated PRS was administratively calculated at the time an inmate was received into DOCS's custody. Annucci informed the judge that the New York Court of Appeals had ruled recently in *Matter of Garner v. New York State Dept. of Correctional Servs.*, 859 N.Y.S.2d 590 (2008) that only the sentencing judge was authorized to pronounce the PRS component of the sentence, and that the pronouncement had to be made in court in the defendant's presence.

---

[6] Plaintiff's letters are not a part of the record, nor is the identity of any individual(s) to whom the letters were sent.

4

Annucci's letter offered the sentencing judge two options.  The first was bringing Barlow before her and correcting the earlier omission by imposing the statutorily mandated PRS.  The second was issuing an order directing DOCS to calculate the term of imprisonment without the PRS, and, if it was determined that Barlow was not subject to any other term of imprisonment, releasing him into the community without further supervision by the Division of Parole.  *Id.* at 20.  The trial judge declined to resentence Barlow to PRS.  (Dkt. No. 40-3 at 42.)  In response, DOCS set July 15, 2008 as the date of completion of Barlow's maximum term.  *Id.* at 114-115.

Barlow was officially discharged from Auburn Correctional Facility on July 15, 2008.  (Dkt. No. 43 at 18.)  By then he had been moved to Attica Correctional Facility so that he could be closer to the lawyer who was representing him on a manslaughter in the first degree charge pending against him in Erie County.  *Id.*  Plaintiff had been indicted on the manslaughter charge on April 18, 2008 in connection with a death that had occurred on October 4, 2007, not long before he had been returned to prison for PRS violations.  (Dkt. No. 40-3 at 7, 107-110.)  After his July 15, 2008 discharge, the Erie County Court ordered Plaintiff transferred to a jail in Erie County to await his January 2009 trial on the manslaughter charge.  *Id.* at 117-118.[7]

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action in the United States District Court Western District of New York (W.D.N.Y.) on October 20, 2008.  (Dkt. No. 1.)  His W.D.N.Y. motion for appointment of counsel was denied without prejudice.  (Dkt. No. 9.)  DOCS and the Division of Parole were named as defendants in the original Complaint.  (Dkt. No.1.)  Barlow was

---

[7]  Plaintiff was convicted of manslaughter in the first degree and in February of 2009 was given a determinate sentence of twenty-five years and five years of PRS. (Dkt. No. 40-3 at 7.)

subsequently permitted to file an Amended Complaint substituting Fischer and Alexander as Defendants by order of the Honorable Michael A. Telesca, United States District Court Judge in the W.D.N.Y.   (Dkt. Nos. 10 and 43.)   On January 29, 2010, Defendants moved to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the claims asserted against them were barred by the Eleventh Amendment. (Dkt. No. 14.)   Defendants also moved for dismissal or transfer of venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure on the grounds that venue was improper.  *Id*. at 1.  The Honorable Charles J. Siragusa, United States District Judge in the W.D.N.Y., determined that venue was proper in the Northern District of New York ("N.D.N.Y.") and transferred the action here on May 7, 2010.  (Dkt. No. 16.)

After the case was transferred to the N.D.N.Y., Judge Sharpe referred Defendants' motion to dismiss on Eleventh Amendment grounds to Magistrate Judge Lowe for Report and Recommendation.  In his Report and Recommendation, Magistrate Judge Lowe recommended that the Defendant's motion be granted and the claims against Fischer and Alexander in their official capacities be dismissed.  (Dkt. No. 28.)  On February 17, 2011, Judge Sharpe adopted the Report and Recommendation, granted the Defendants' motion, and dismissed the claims asserted against them in their official capacities.  (Dkt. No. 31.)  Defendants thereafter filed their Answer, which included qualified immunity among the affirmative defenses.  (Dkt. No. 32 at 1.) Following Plaintiff's deposition and document production by Defendants, Defendants moved for summary judgment.  (Dkt. Nos. 40 and 40-3 at 5-136.)

### III.    APPLICABLE LEGAL STANDARDS

Summary judgment may be granted only if the submissions of the parties taken together

"show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact. *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, 1999 WL 983876 at *3,

U.S. Dist. LEXIS 16767 at *8 (S.D.N.Y. 1999), citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d

Cir. 1991).

Plaintiff's opposition to Defendants' motion for summary judgment (Dkt. No. 43)

consists of an affidavit in letter form and a number of documents relating to the sentencing on his

robbery conviction and the administrative imposition and enforcement of PRS.  Barlow did not

submit a response to Defendants' Statement of Material Facts as required under  L.R. 7.1(a)(3).[8]

Where a party fails to respond to the movant's Statement of Material Facts, the facts will be

accepted as true (1) to the extent they are supported by evidence in the record,[9] and (2) the

nonmovant, if proceeding *pro se*, has been specifically advised of the possible consequences of

failing to respond to the motion.[10]  *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

## IV.    ANALYSIS

**A.    Jenna's Law**

### 1.    The New York State Courts' Pre-*Earley* Application of the Law on Mandatory Post-Release Supervision

In 1998, the New York State Legislature enacted Jenna's Law, which requires

---

[8]  L.R. 7.1(a)(3) provides that "<u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>."

[9]  *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d. Cir. 2004) ("[I]n determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts in the moving party's [Statement of Material Facts].  It must be satisfied that the citation to evidence in the record supports the assertion.") (citations omitted).

[10]  Defendants have complied with L.R. 56.2 by providing Plaintiff with the requisite notice of the consequences of his failure to respond to their summary judgment motion.  (Dkt. No. 40-1 at 1-2).

determinate sentencing for all violent felonies.  N.Y. Penal Law § 70.45, one of the statutes

included in the legislation, provides that each determinate sentence shall include a mandatory

period of PRS that commences upon an inmate's release from imprisonment to Division of

Parole supervision.  Under the statute, violation of the conditions of PRS subject a former inmate

to further imprisonment up to the remaining period of PRS, which in the case of a predicate felon

like Plaintiff, is a mandatory five years.  *Id*.

Following the enactment of Jenna's Law, New York state courts routinely assumed that

the period of PRS was automatically included in every determinate sentence and did not

specifically pronounce PRS as a part of the sentence.[11]  *See People v. Edwards*, 872 N.Y.S.2d

881, 883-884 (N.Y. Sup.), *aff'd*, 878 N.Y.S.2d 354 (1st Dept.), *lv. denied*, 884 N.Y.S.2d 706

(2009).  *See also People v. White*, 744 N.Y.S.2d 924, 924-925 (4th Dept.), *lv. denied*, 752

N.Y.S.2d 601 (2002) ("Post release supervision is mandatory for determinate sentences and is

automatically included in the sentence.").  When a court did not pronounce a sentence of PRS, it

was added administratively by DOCS.[12]  (Dkt. No. 40-3 at 140-141.)  For a number of years, the

administrative imposition of PRS by DOCS was upheld by the New York appellate courts

without question.  *See e.g.  People v. Adams,* 785 N.Y.S.2d 331 (1st Dept. 2004), *lv. denied*, 797

N.Y.S.2d 425 (2005) (PRS was automatically included in the defendant's sentence); *Deal v.*

---

[11]  A review of DOCS records in 2007 revealed approximately 8,100 instances between
the September 1, 1998 effective date of N.Y. Penal Law § 70.45 and January 4, 2008 where both
the sentencing transcript and commitment order were silent regarding PRS.  (Dkt. No. 40-3 at
149-150.)

[12]  According to testimony given by DOCS Executive Deputy Commission Annucci in
*State v. Myers*, 870 N.Y.S.2d 757 (N.Y. Supp. 2008), DOCS shared the courts' assumption that
PRS was automatically included in the sentence by operation of law.  (Dkt. No. 40-3 at 2, 182.)

*Goord*, 778 N.Y.S.2d 319, 320 (3d Dept. 2004), *app. dism.*, 786 N.Y.S.2d 814 (2005) (because

the defendant was a violent felon, a period of PRS was automatically included in his sentence);

*People v. Hollenbach*, 762 N.Y.S.2d 860, 861 (4ᵗʰ Dept.), *lv. denied*, 769 N.Y.S.2d 208 (2003)

(because post release supervision is automatically included in a determinate sentence "there is no

need for the court to specify a period of postrelease supervision at sentencing"). *See also Scott v.*

*Fischer*, 616 F.3d 100, 106 (2d Cir. 2010) ("New York State courts had routinely upheld the

administrative imposition of  mandatory PRS under Jenna's Law.").

### 2.    The Second Circuit Decision in *Earley v. Murray*

After more than seven years of nearly uniform acceptance of administratively imposed

PRS by the New York courts, the Second Circuit held that the administrative imposition of PRS

was unconstitutional in *Earley v. Murray*, 451 F.3d 71 (2d Cir.), *reh'g denied,* 462 F.3d 147 (2d

Cir. 2006), *cert. denied, Burhlre v. Earley*, 551 U.S. 1159 (2007).  *Earley* involved a petition for

a writ of habeas corpus.  In February 2002, Sean Earley pleaded guilty to attempted burglary in

the second degree and was sentenced to six years incarceration pursuant to a plea agreement.  At

the time of his plea and sentencing, Earley was unaware of the term of PRS mandated under N.Y.

Penal Law § 70.45.  Moreover, PRS was not included in the sentence announced by the court or

in his sentencing and commitment papers.  As in this case, PRS was subsequently imposed

administratively by DOCS.  When Earley's motion for resentencing deleting the PRS was denied

in state court, he filed a petition for a writ of habeas corpus in federal court.[13]

---

[13]  Earley's state court motion was denied by the trial court in March of 2003. The New
York State Appellate Division, Second Department denied his motion for leave to appeal in May
of 2003.  *See Earley v. Annucci*, No. 08-CV-669, 2011 WL 7112917 at *2, 2011 U.S. Dist.
LEXIS 152561 at *6-7 (N.D.N.Y. 2011).  Both determinations were made before the Court of
Appeals decided *Catu*, 792 N.Y.S.2d 887, under which Earley would have been entitled to

In *Earley*, the Second Circuit relied upon the 1936 Supreme Court decision in *Hill v. United States ex. rel. Wampler*, 298 U.S. 460 (1936), in holding that the administrative imposition of PRS was contrary to clearly established federal law.  In *Wampler*, also involving a writ of habeas corpus, the petitioner was sentenced by the court to a term of imprisonment and a fine.  The clerk of the trial court, in accord with customary procedure in that court, and as instructed by the judge, added a provision to the sentence that the petitioner would remain committed until the fine had been paid.  *Id*. at 761.  Writing that "[t]he only sentence known to the law is the sentence or judgment entered upon the records of the court," the Supreme Court held in *Wampler* that under clearly established federal law, the clerk had no power to alter the sentence announced by the court, and the added provision was void.[14]  *Id*. at 464.

The Second Circuit, concluding that DOCS "has no more power to alter a sentence than did the clerk of the court in *Wampler*," held that the administrative imposition of PRS violated Earley's Fourteenth Amendment right to due process and was a nullity.  *Earley*, 451 F.3d at 76. The Court vacated the district court's judgment denying the writ, remanded the case for a determination of whether the petition was timely, and instructed the district court upon a finding of timeliness to excise the PRS from Earley's sentence.  *Id.* at 74.  The Court made clear that its ruling in *Earley* was "not intended to preclude the state from moving in the New York courts to modify Earley's sentence to include the mandatory PRS term."  *Id.* at 76.

---

reversal of his conviction but not resentencing without PRS, the relief he had sought in state court.

[14]  In *Earley*, the Second Circuit explained that "[a]lthough *Wampler* does not identify the source of the rule that it announces, we believe that it is based in the due process guarantees of the United States Constitution."  451 F.3d at 76.

    **3.**    **New York's Post-*Earley* Treatment of Administratively Imposed PRS**

The Second Department of New York's Appellate Division did not hesitate to follow the

Second Circuit ruling in *Earley.  See e.g. People v. Smith*, 829 N.Y.S.2d 226 (2d Dept. 2007)

(plaintiff's sentence did not include PRS where neither the sentencing minutes nor the court's

commitment order mentioned PRS); *People v. Noble*, 831 N.Y.S.2d 198 (2d Dept. 2007) (same).

The First and Third Departments, on the other hand, were slow to embrace *Earley*.

In *People v. Sparber*, 823 N.Y.S.2d 405, 406 (1st Dept. 2006), *aff'd as modified*, 859

N.Y.S.2d 582 (2008), the First Department rejected the argument that failure of the sentencing

court to mention a period of PRS rendered the later inclusion of PRS on the commitment sheet

prepared by the clerk a nullity.  The rejection came in spite of the Supreme Court's ruling in

*Wampler*, followed in *Earley*, that the clerk had no authority to alter the sentence that was

pronounced by the judge.  The First Department, focusing on the mandatory nature of PRS,

reasoned in *Sparber* that:

> "Each determinate sentence also includes, as a part thereof, an
> additional period of post-release supervision" (Penal Law
> § 70.45(1) [emphasis added]) .... Therefore, even though the
> court's sentence was silent as to PRS, it necessarily included a
> five-year term thereof (citations omitted).  Furthermore, the court
> acting through its court clerk, set forth the PRS provision in the
> commitment sheet thereby satisfying any constitutional
> requirements that a sentence be "entered upon the records of the
> court" (*Hill v. United States ex rel. Wampler*, 298 US 460, 464
> (1936); compare *Earley v. Murray*, 451 F.3d 71, 75-76 (2d Cir.
> 2006).  *We see no constitutional infirmity in the use of a written
> document to clarify an aspect of a sentence upon which the court's
> oral pronouncement was silent (citation omitted), particularly
> where, as here, the relevant portion of the written document
> performs the ministerial function of setting forth a provision
> already included in the sentence by operation of law.* (citation
> omitted) (emphasis added).

In another post-*Earley* decision, *Matter of Garner v. New York State Dept. of Correctional Serv.*, 831 N.Y.S.2d 923 (3d Dept. 2007), *rev'd*, 859 N.Y.S.2d 590 (2008), the Third Department dismissed an Article 78 petition seeking relief in the nature of prohibition in which petitioner asked the court to prohibit DOCS from administratively imposing a sentence of PRS.  The articulated grounds for dismissal were that prohibition was unavailable because DOCS was "only enforcing, not imposing, a part of petitioner's sentence which was automatically included by statute," and was not performing a judicial function, thereby rendering prohibition unavailable.  *Id.*, 831 N.Y.S.2d at 923.

It was not until February of 2008 that all four Departments of the New York Appellate Division were following *Earley*.  *See People v. Figueroa*, 846 N.Y.S.2d 87 (1st Dept 2007); *Noble*, 831 N.Y.S.2d 198;  *Matter of Dreher v. Goord*, 848 N.Y.S.2d 758 (3d Dept. 2007); *People ex rel. Burch v. Goord*, 853 N.Y.S.2d 756 (4th Dept. 2008).  During the period between the Second Circuit's decision in *Earley* and all four Appellate Division Departments' acceptance of its holding, there was substantial confusion and disagreement in the state trial courts over the impact of *Earley*.[15]  In *People v. Keile*, No. 9917-98, 2006 WL 2569964 at *2, 2006 N.Y. Misc.

---

[15]  *See People v. Edwards*, No. 5588/2001, 2007 WL 969416 at *11, 2007 N.Y. Misc. LEXIS 1542 at ***38-39 (N.Y. Sup. 2007) ("the mandatory five-year period of [PRS] was automatically, and validly, imposed by operation of law under [Penal Law] § 70.45(1) at the time the judge pronounced his determinate prison sentence, resulting in an authorized, legal and valid sentence."*)*; *People ex. rel White v. Warden, Rikers Island Corr. Facility*, 833 N.Y.S.2d 363, 367 (N.Y. Sup. 2007) ("Since *Earley* was decided, the First Department has consistently rejected constitutional challenges to periods of [PRS] that were not announced by the court at the time of sentence, but nonetheless appeared in a court document."); *People ex rel. Hernandez v. Warden*, No. 75063-06, 2006 WL 3843586 at *3, 2006 N.Y. Misc. LEXIS 3905 at ***7-8 (N.Y. Sup. 2006) (concluding that *Earley* was not binding on state courts, and reasoning that the First Department's decision in *Sparber*, 823 N.Y.S.2d 405, was predicated on a Fourth Department holding that PRS is automatically included with a determinate sentence, not on the inclusion of

13

LEXIS 2336 at *6-7 (N.Y. Sup. 2006), in which the defendant moved to vacate his guilty plea or

modify his sentence because he had not been advised that his sentence would include PRS, the

trial court discussed the confusion created by *Earley*, writing:

> The *Earley* case creates confusion about the legal status of the term
> of post-release supervision that was added to defendant's sentence
> by the Department of Correctional Services.  If *Earley* correctly
> interpreted federal constitutional law, defendant's sentence
> currently does not include a term of post-release supervision, and
> he may not be subjected to post-release supervision when he is
> released from prison, unless this court resentences him before then
> and imposes the term of post release supervision that this court
> neglected to impose on the day of sentencing.  But this court's
> understanding of law is that the defendant cannot be resentenced at
> this point even though a determinate sentence without a period of
> post-release supervision would violate state law (citation omitted).

> This court concludes that the New York appellate courts deserve an
> opportunity to decide whether to follow *Earley* (*see People v. Kin
> Kam*, 78 N.Y.2d 54, 60 (1991) [interpretation of federal
> constitutional law by a lower federal court is persuasive but not
> binding authority on New York courts]).  Ordinarily, a court must
> follow its understanding of the law and await an appeal.  But this is
> a unique situation.  *This defendant, numerous other defendants
> who have had a term of post-release supervision added to their
> sentences, the Department of Correctional Services, this court, and
> other courts need guidance about how to proceed in this situation*.
> (emphasis added).

In April of 2008, the New York Court of Appeals issued decisions in *People v. Sparber*,

859 N.Y.S.2d 582 (2008) and *Matter of Garner v. New York State Dept. of Correctional Servs*.,

859 N.Y.S.2d 590 (2008).  Both cases dealt with the legality of DOCS administrative imposition

---

PRS on the defendant's commitment papers).  *See contra  Matter of Waters v. Dennison*, 827
N.Y.S.2d 596, 600 (N.Y. Sup. 2007) (finding that *Earley* required that the PRS term and parole
violation warrant be vacated where PRS had been administratively imposed by DOCS); *People
ex rel Lewis v. Warden*, 825 N.Y.S.2d 341 (N.Y. Sup. 2006) (DOCS administrative imposition of
PRS post-sentence violated the petitioner's due process rights under the Constitution).

of PRS where the sentencing courts had failed to pronounce PRS as a part of a determinate sentence.  Neither was decided on constitutional grounds and neither cited *Earley*.

In *Sparber*, the Court explained that N.Y. CPL §§ 380.20 and 380.40 "collectively require that courts 'must pronounce sentence in every case where a conviction is entered' and that – subject to limited exceptions ... '[t]he defendant must be personally present at the time the sentence is pronounced.'" *Sparber*, 859 N.Y.S.2d at 587.  The Court found that sentencing is a uniquely judicial responsibility and rejected the argument that the court clerk's preparation and execution of a commitment sheet bearing the judge's name constituted a proper sentencing pronouncement.  The Court rejected the defendants' assertion that the failure of the sentencing court to orally pronounce their PRS terms at sentencing entitled them to have the PRS expunged from their sentences, holding that because of the mandatory nature of PRS, the defendants were not entitled to expungement, only resentencing.[16]  The Court of Appeals also ruled in *Garner* that N.Y. CPL §§ 380.20 and 380.40 together provide that only the court may impose a sentence of PRS.

Following quickly on the heels of *Sparber* and *Garner*, on June 30, 2008, the New York Legislature codified a resentencing procedure to deal with those cases in which a mandatory term of PRS had not been pronounced by the court.  See N.Y. Corrections Law § 601-d; N.Y. Penal Law § 70.85.

---

[16]  The Court of Appeals in *Sparber* described the failure of the court to pronounce the PRS mandated by Penal Law § 70.45(1) as "only a procedural error, akin to a misstatement or clerical error which the sentencing court could easily remedy."  *Sparber,* 859 N.Y.S.2d at 589.

**B.      Plaintiff's Claims Against the Defendants**

**1.      The Undisputed Facts Material to Plaintiff's Claims**

The material facts appear to be essentially undisputed in this case.  When Plaintiff was sentenced as a second time violent felon to concurrent seven year terms on two counts of robbery in the second degree in April of 2003, the court failed to pronounce a term of PRS as mandated by Penal Law § 70.45(1). (Dkt. No. 43 at 22-28.)   The sentencing and commitment document sent to DOCS likewise contained no reference to the imposition of PRS.  (Dkt. No. 43 at 19-20.) DOCS administratively added a five year term of PRS to Plaintiff's sentence.  *Id*. at 19 and 22; (Dkt. No. 40-3 at 44).

When Plaintiff was released with a five year term of PRS on April 26, 2007, one year before his maximum expiration date, special conditions of release were imposed on him by the Division of Parole.  *Id.* at 46.  A violation of release report was filed on Barlow on October 9, 2007 for violation of the conditions of his PRS, and at his parole revocation hearing on October 23, 2007, he was given a delinquency assessment of twelve months for violation of the conditions of his PRS and re-incarcerated.  *Id*. at 49, 53-57, 98, and 104-105.

Following the Court of Appeals decisions in *Sparber* and *Garner*, but prior to the enactment of Corrections Law § 601-d and Penal Law § 70.85, DOCS sent Plaintiff's sentencing judge a letter giving her the option of resentencing him to a term of PRS or declining to do so and having DOCS set a release debt if Barlow's incarceration for violation of the conditions of his PRS was the only basis for his continued incarceration.  (Dkt. No 43 at 19-20.)   DOCS set a maximum expiration date of July 15, 2008 on Plaintiff's robbery sentence when his sentencing

16

judge declined to resentence him to a term of PRS.  (Dkt. No. 43 at 18.)  Barlow was officially

discharged from Auburn Correctional Facility on July 15, 2008.  *Id.*

### 2.     Plaintiff's Claims Under § 1983

In his Amended Complaint filed in this § 1983 action, Plaintiff has alleged that the

Defendants illegally imposed a term of PRS on his sentence when it was not in his sentencing

minutes or commitment documents.  Plaintiff claims that as a result, he was illegally sentenced to

twelve months for violating the conditions of his release instead of only the six and a half months

remaining on his sentence.  (Dkt. No. 10.)  Barlow has not identified specific violations of his

constitutional rights in his Amended Complaint.  *Id*.  However, construed liberally, his Amended

Complaint can be said to state a claim for violation of his Fourteenth Amendment due process

rights.  Moreover, the undisputed facts establish that under the holding in *Earley,* Plaintiff's due

process rights were, in fact, violated by DOCS's administrative imposition of PRS to his

sentence and the subsequent enforcement of the PRS.  *See Scott*,  616 F.3d at 102 ("It is now

indeed clearly established that ... administrative imposition of PRS is unconstitutional.").[17]

---

[17]  Plaintiff's Amended Complaint might also be construed to state both § 1983 and New York state law claims for false arrest or imprisonment.  *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (elements of a claim for false arrest under both New York state law and a § 1983 claim under the Fourth Amendment include that the defendant intended to confine the plaintiff without consent, that the plaintiff was aware of the confinement, and the confinement was not otherwise privileged).  The evidence presently before the Court, however, does not appear to support a claim for false arrest or imprisonment given that an arrest based on a warrant that is valid on its face, issued by a party empowered to act, is privileged.  *See Santiago v. Fischer*, No. 09-CV-1383, 2009 WL 3852001 at*7, 2009 U.S. Dist. LEXIS 107815 at *21-22 (E.D.N.Y. 2009) (an arrest made pursuant to a facially valid warrant issued on reasonable cause as a result an of alleged PRS violation is privileged); *Albergottie v. New York City*, No. 08-CV-8331, 2011 WL 519296, at *7, 2010 U.S. Dist. LEXIS 141353 at *21-22 (S.D.N.Y. 2011) (a parole warrant supported by reasonable cause is sufficient to privilege an arrest even if the warrant is later declared invalid).

C.     **Qualified Immunity**

Defendants contend that they are entitled to summary judgment dismissing Plaintiff's claims on qualified immunity grounds.  The doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The question of whether a right is "clearly established" requires courts to consider "(1) whether the right was defined with reasonable specificity; (2) whether Supreme Court or court of appeals case law supports the existence of the right in question, and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful."  *Scott*, 616 F.3d at 100.  As explained by the Second Circuit in *McCullough v. Wyandanch Union Free School Dist.*, 187 F.3d 272, 278 (2d Cir. 1999):

> A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right.  The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct.  The unlawfulness must be apparent.

1.     **Pre-*Earley***

*Earley* had not yet been decided in April 2002 when DOCS administratively imposed a five year term of PRS on Plaintiff as a part of his sentence for robbery.  (Dkt. No. 40-3 at 44.)   In *Scott*, 616 F.3d at 107, the Second Circuit held that prior to *Earley*, it was not clearly established that the administrative imposition of mandatory PRS was unconstitutional.  In so holding, the Court explained that "[i]n the presence of a statute that requires all sentences for certain crimes to

18

be accompanied by mandatory PRS, and New York cases that routinely upheld the administrative imposition that PRS, we conclude that it was not clearly established for qualified immunity purposes prior to *Earley* that the administrative imposition of PRS violates the Due Process Clause." *Id.* Under *Scott*, Defendants are entitled to qualified immunity with respect to the administrative imposition of a term of PRS on Plaintiff in April of 2002.

### 2. Post-*Earley* and Pre-*Sparber* and *Garner*

*Earley* was decided nearly a year before Plaintiff was released from prison in April of 2007. He was re-incarcerated for violation of the conditions of his PRS in October of 2007 and released again on July 15, 2008 following the Court of Appeals decisions in *Sparber* and *Garner*. In *Scott*, the Second Circuit did not find it necessary to determine precisely when it became clearly established that the administrative imposition of PRS, even when statutorily mandated, is unconstitutional for qualified immunity purposes. *Id.* at 108. The Court did, however, acknowledge that two of the New York Appellate Division Departments continued to find the practice constitutional, and that it was not until 2008 when *Sparber* and *Garner* were decided that the New York Court of Appeals held that the practice was contrary to New York law. *Id.* at 107. The Second Circuit also suggested that "[i]n circumstances of such apparent judicial confusion as to the constitutional propriety of a statutory mandate, qualified immunity might well continue to shield state officials acting pursuant to that statute [Penal Law § 70.45(1)]."[18] *Id.*

---

[18] See also *Ruffins v. Department of Correctional Services*, 701 F.Supp.2d 385, 404-405 (E.D.N.Y. 2010), in which the district court noted that "... *Earley* did not speak authoritatively on the remedial issue of how to treat prisoners who were currently serving their PRS terms or were currently imprisoned for violations of the terms of their administratively imposed PRS" and that "during the period following the Second Circuit's opinion in *Earley* but prior to the rulings of the New York Court of Appeals in *Sparber* and *Garner*, New York state courts were offering no clear guidance regarding the holding of *Earley* or its application."

In light of the clear post-*Earley* judicial confusion in the New York state courts, with trial courts seeking guidance from Appellate Division Departments that could not even agree among themselves on the holding in *Earley,* the Second Circuit and virtually every district court considering the issue have found state officials entitled to qualified immunity on claims arising out of the administrative imposition of PRS at least through the time the New York Court of Appeals decided *Sparber* and *Garner* in April of 2008.  *See Rivers v. Fischer*, 390 Fed.Appx. 22, 2010 WL 3199675 at *24, 2010 U.S. App. LEXIS 16884 at **3 (2d Cir. 2010) ("[g]iven the ambiguity in the law between *Earley* and the time of River's release [less than two months after the enactment of Corrections Law § 601-d]," defendants were entitled to qualified immunity); *Joyner-El-Qawi-Bey v. Russi*, 439 Fed.Appx. 36, 2011 WL 4091017 at **1, 2011 U.S. App. LEXIS 19041 at **2 (2d Cir. 2011) (defendants were entitled to qualified immunity where a term of PRS administratively imposed on the plaintiff in 2006 continued in force until his re-sentencing in 2009).  *See also Rodriguez v. Fischer*, No. 08-CV-4662, 2010 WL  438421 at *6, 2010 U.S. Dist. LEXIS 10091 at *19-20 (E.D.N.Y. 2010) (holding that since New York courts were in disagreement regarding administratively imposed PRS at the time of the plaintiff's post-*Earley* arrests and incarcerations for violations of the terms of his PRS, and absent contrary direction, state officials were entitled to rely on presumptively valid statutes and to qualified immunity); *Ruffins v. Department of Correctional Services*, 701 F.Supp.2d 385, 406-408 (E.D.N.Y. 2010) (concluding that between the Second Circuit decision in *Earley* and New York Court of Appeals decisions in *Sparber* and *Garner* it was not clearly established that DOCS could not enforce the terms of administratively imposed PRS) (collecting cases);  *Hardy v. Fischer*, No. 08-CV-2460, 2010 WL 4359229 at *3, 2010 U.S. Dist. LEXIS 117007 at *9 (S.D.N.Y. 2010) ("[T]his court

20

now finds that the unlawfulness of administratively imposed PRS was not clearly established from the standpoint of a reasonable DOCS officer in the period after *Earley* and before the New York Court of Appeals' decisions in *Garner* and *Sparber.*"); *Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204 at *8, 2010 U.S. Dist. LEXIS 137660 at *28 (S.D.N.Y. 2010) (holding that defendants were entitled to qualified immunity for actions taken to enforce the plaintiff's PRS following *Earley* but prior to *Sparber* and *Garner*) (collecting cases); *Locantore v. Hunt*, 775 F.Supp.2d 680, 687 (S.D.N.Y. 2011) (noting that "the overwhelming consensus within the Second Circuit is that the protection of qualified immunity applied until April 2008 when *Sparber* and *Garner* were decided" and finding the defendants entitled to qualified immunity).  *See contra Bentley v. Dennison*, ___ F.Supp.2d ___,  No. 11-CV-1056, 2012 WL 426551 at *12, 2012 U.S. Dist. LEXIS 17721, *13 (S.D.N.Y. 2012) (there is no qualified immunity for the affirmative imposition and enforcement of administratively imposed PRS after *Earley*).

Not only was there a lack of judicial clarity concerning the constitutionality of administratively imposed PRS in the state courts, Plaintiff has presented no clearly established authority obligating or even authorizing DOCS to revoke his administratively imposed, statutorily mandated PRS, release him from incarceration for violation of the terms of his PRS, or even to move for resentencing until Corrections Law § 601-d was enacted.  *See Scott*, 616 F.3d at 109 ("[I]t was not until June 2008, some ten months after Scott's release from her parole violation sentence, that the New York Legislature provided a statutory method by which government officials could seek to resentence or otherwise handle the cases of inmates who had received administrative imposition of PRS, also thereby imposing an affirmative duty on the part of such officials to do so."); *Pendleton v. Goord*, ___ F.Supp.2d ___, No. 11-CV-0138, 2012 WL

1005557 at *10, 2012 U.S. Dist. LEXIS 42223 at *30-31 (E.D.N.Y. 2012) (it was not clearly established that DOCS was authorized to decline to enforce the terms of administratively imposed mandatory PRS until the Court of Appeals decided *Sparber* and *Garner* and it was, therefore, objectively reasonable for the defendants to have arrested plaintiff for violations of the terms of his PRS in September of 2007 and February of 2008).

Plaintiff has likewise failed to present clearly established authority imposing a post-*Earley* duty or grant of authority on the Division of Parole to cease enforcement of violations of the conditions his mandatory PRS.  *See Pendleton v. Goord*, *id.*,  *Albergottie v. New York City*, No. 08-CV-8331, 2011 WL 519296 at *6, 2011 U.S. Dist. LEXIS 141353 at *16-17 (S.D.N.Y. 2011) (holding that defendants were entitled to qualified immunity for post-*Early* enforcement of PRS until June 2008 when Corrections Law § 601-d was enacted because "... a reasonable DOCS or parole official would not realize that he had a duty or authority to seek the correction of a procedurally deficient but otherwise valid and statutorily required period of PRS.").

## V.  CONCLUSION

For the reasons set forth herein, I have concluded that the Defendants are entitled to qualified immunity and recommend that Defendants' motion for summary judgment (Dkt. No. 40) be granted, and the Plaintiff's Amended Complaint (Dkt. No. 10) be dismissed in its entirety.

## VI.  RECOMMENDATION

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 40) be

**GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: May 15, 2012
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge